# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION |
| Plaintiff, | ) | NUMBER: 2:19-cv-14580 |
| v. | ) | SECTION: |
| KCM MANAGEMENT, INC., and LCVEGAS CORPORATION | ) | |
| Defendants. | ) | |

## COMPLAINT

The United States of America, acting at the request of the United States Coast Guard, files this Complaint and alleges the following:

### NATURE OF THIS ACTION

1. The United States seeks repayment by defendants KCM Management, Inc., and LCVegas Corporation (collectively, "Defendants"), as jointly and severally liable responsible parties under Section 1002(a) of the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702(a), for the portion of $1,074,767.05 in costs paid by the Oil Spill Liability Trust Fund (the "Fund") for a removal action in April and May of 2016 (the "Response"), which included the plugging and abandoning of Simoneaux Well No. 10 ("Well" or "Facility") in Bayou Gauche, St. Charles Parish, Louisiana.

2. The United States seeks a judgment against Defendants, jointly and severally, for all costs incurred by the Fund by reason of this removal action, including the portion of the

$1,074,767.05 in costs attributable to the plugging and abandonment of the Well, interest (including prejudgment interest), attorney's fees, and any other relief that may be appropriate.

## JURISDICTION AND VENUE

3.     The United States is authorized to bring this suit and the Court has jurisdiction over the subject matter of this action and over the parties pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. §§ 1331 and 1345.

4.     Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519.

5.     Venue is proper in the Eastern District of Louisiana ("this District") pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. § 1391(b), because it is the judicial district in which the discharge and the resulting response actions occurred.

## DEFENDANTS

6.     Defendant KCM Management Inc. is a Texas Corporation with a registered address and principal place of business of 10455 N. Central Expressway, Suite 109, Dallas, Tx. 75231.  Defendant KCM Management Inc. has a registered office and principal place of business in Louisiana at 11754 South Harrell's Ferry Road, Suite B, Baton Rouge, La. 70816. Defendant KCM Management Inc. was an active non-Louisiana business corporation from 1999 to 2003, from 2004 to 2005, and from 2006 to 2016.  In September 2016 action was taken by the Louisiana Secretary of State to revoke KCM Management Inc.'s active status.   The two officers are Alvin Bellaire, Jr. and Kenoth H. Fourney.

7.     Defendant KCM Management Inc. was the last operator of record of the Facility.

8.     Defendant KCM Management Inc. held authorizations under applicable State law for geological exploration of the lease on which the Facility is located.   This includes

Compliance Orders No. EI&E-11-1073 and No. EI&E-12-0079, under which the State of Louisiana Department of Natural Resource Office of Conservation and Defendant KCM Management Inc. agreed to a schedule by which Defendant KCM Management Inc. would seek permits and commence operations to rework and/or plug the Well.

9. Defendant KCM Management Inc. has held permits related to oil and gas exploration issued under applicable State law for the Well, including a permit to drill for minerals issued on December 22, 2003 and Work Permit L#0839-14, issued on June 16, 2014 to plug and abandon the Well.

10. Defendant LCVegas Corporation is a Texas Corporation with a registered address and principle place of business of 10455 N. Central Expressway, Suite 109, Dallas, Tx. 75231. Defendant LCVegas Corporation has a registered office and principal place of business in Louisiana at 11754 South Harrell's Ferry Road, Suite B, Baton Rouge, La. 70816. Defendant LCVegas Corporation was an active non-Louisiana business corporation from 2004 to 2005 and from 2006 to 2018. In September 2018 action was taken by the Louisiana Secretary of State to revoke LCVegas Corporation's active status. The three officers are Larry Cotton, Alvin Bellaire, Jr., and Kenoth H. Fourney.

11. Defendant LCVegas Corporation was an owner and lessee of the Facility. Defendant LCVegas Corporation held a working-interest ownership in the Oil and Gas Lease dated March 14, 1940, granted by S.J. Simoneaux et al., as lessors, to and in favor of Stanolind Oil and Gas Company, as lessee (recorded COB PP, Folio No. 477 of the St. Charles Parish conveyance records).

## STATUTORY AND REGULATORY BACKGROUND

12. OPA Section 1002(a), 33 U.S.C. § 2702(a), provides that "each responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of this section [33 U.S.C. § 2702(b)] that result from such incident."

13. OPA Section 1001(7), 33 U.S.C. § 2701(7), defines "discharge" to mean "any emission (other than natural seepage), intentional or unintentional" and to include "spilling, leaking, pumping, pouring, emitting, emptying, or dumping[.]"

14. OPA Section 1001(9), 33 U.S.C. § 2701(9), defines "facility" to mean "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: . . . storing, handling, transferring, processing, or transporting oil."

15. OPA Section 1001(22), 33 U.S.C. § 2701(22), defines "offshore facility" to mean "any facility of any kind located in, on, or under any of the navigable waters of the United States, and any facility of any kind which is subject to the jurisdiction of the United States and is located in, on, or under any other waters, other than a vessel or a public vessel[.]"

16. OPA Section 1001(24), 33 U.S.C. § 2701(24), defines "onshore facility" to mean "any facility (including, but not limited to, motor vehicles and rolling stock) of any kind located in, on, or under, any land within the United States other than submerged land[.]"

17. OPA Section 1001(14), 33 U.S.C. § 2701(14), defines "incident" to mean "any occurrence or series of occurrences having the same origin, involving one or more . . . facilities . . . resulting in the discharge or substantial threat of discharge of oil[.]"

18.     OPA Section 1001(21), 33 U.S.C. § 2701(21), defines "navigable waters" as "the waters of the United States, including the territorial sea[.]"

19.     OPA Section 1001(23), 33 U.S.C. § 2701(23), defines "oil" to mean "oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil[.]"

20.     OPA Section 1001(27), 33 U.S.C. § 2701(27), defines "person" to mean an "individual, corporation, partnership, [or] association[.]"

21.     OPA Section 1001(30), 33 U.S.C. § 2701(30), defines "remove" and "removal" to mean "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches[.]"

22.     OPA Section 1001(31), 33 U.S.C. § 2701(31), defines "removal costs" to mean "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident[.]"

23.     OPA Section 1001(32)(B), 33 U.S.C. § 2701(32)(B), defines "responsible party" to include, "[i]n the case of an onshore facility (other than a pipeline), any person owning or operating the facility."

24.     OPA Section 1001(32)(C), 33 U.S.C. § 2701(32)(C), defines "responsible party" to include, "[i]n the case of an offshore facility (other than a pipeline), "the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement granted under applicable State law . . . for the area in which the facility is located."

25. OPA Section 1001(16), 33 U.S.C. § 2701(16), defines "lessee" to include "a person holding a leasehold interest in an oil or gas lease on lands beneath navigable waters[.]"

26. OPA Section 1001(28), 33 U.S.C. § 2701(28), defines "permittee" to include "a person holding an authorization, license, or permit for geological exploration issued under . . . applicable State law[.]"

27. OPA Section 1001(32)(G), 33 U.S.C. § 2701(32)(G), provides that in the case of an abandoned onshore or offshore facility, the responsible party is "the persons or entities that would have been responsible parties immediately prior to the abandonment of the vessel or facility."

28. OPA Section 1002(b), 33 U.S.C. § 2702(b), provides that the "removal costs" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "(A) all removal costs incurred by the United States . . . under subsection (c), (d), (e), or (*l*) of Section 1321 of this title [Section 311 of the Clean Water Act, 33 U.S.C. § 1321]. . .; and (B) any removal costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan [40 C.F.R. Part 300 ("NCP")]."

29. Pursuant to OPA Section 1012(a)(1), 33 U.S.C. § 2712(a)(1)(A), the Fund is available for "the payment of removal costs . . . determined . . . to be consistent with the [NCP]." The Fund is administered by the Coast Guard's National Pollution Funds Center ("NPFC") and financed in part by recoveries from responsible parties.

### **GENERAL ALLEGATIONS**

30. The Well was located in an oilfield canal in the Bayou Des Allemands Oil and Gas Field, approximately 0.3 miles east of Bayou Gauche, Saint Charles Parish, Louisiana. The Well consisted of a single wellhead tree with multiple valves and flow lines.

31.     The Well was surrounded by a 6x8 foot platform in about five feet of water. The water under this platform is part of a tidally influenced canal.   The canal is navigable in fact.   Vessels can and do use the canal.   Drainage from the canal flows into the Bayou Des Allemands, which then flows into the Salvador Wildlife Management area approximately 2.8 miles downstream.   The Bayou flows into the Gulf of Mexico.

32.     Much of the city of Bayou Gauche is located only a few feet from Bayou Des Allemands and is often flooded due to the low lying location which is influenced by inland winds.   Wildlife is abundant in the area due to the canals and wetlands vegetation.

33.     On May 13, 2013 and September 15, 2014, the Louisiana Department of Natural Resources Office of Conservation ("LDNR") sent a letter to Defendant KCM Management, Inc., informing it that the oil field site which includes the Well had not been closed in accordance with Statewide Order No. 29-B, and was therefore deemed abandoned and declared orphaned.   The letter noted that, as the last operator of record, Defendant KCM Management, Inc. could be held liable for restoration costs for the site under Louisiana state law.

34.     According to a LDNR inspection report dated September 2, 2014, the Well was leaking and had discharged waste from oil and gas exploration and production activities.

35.     According to a LDNR inspection report dated September 26, 2014, the Well was leaking gas and condensate and creating a sheen in the water.

36.     According to a LDNR inspection report dated October 28, 2014, the Well was leaking gas.

37.     On July 10, 2015, LDNR referred the site to the U.S. Environmental Protection Agency.   At the time, LDNR reported that the Well had been actively leaking oil and gas from the flange above the crown valve for over two years, and the current operator of record had not

addressed the issue after repeated notifications. The LDNR Inspector reported the Well had at times produced enough pressure for oil and water to be sprayed on the northern canal bank, approximately 30-50 feet from the wellhead. The referral included LDNR photos showing evidence of a sheen of oil on the water.

38. On July 10, 2015, the U.S. Environmental Protection Agency Federal On-Scene Coordinator ("EPA" or "FOSC") determined that the Well was the source of a discharge of oil.

39. On a July 14, 2015, EPA visited the Well and observed evidence of previous releases of oil from the Well, including oil present on the well head and surrounding platform. EPA also observed leaking oil on the flange above the crown valve and bottom flange of the Well. EPA saw no evidence of routine maintenance or response by an operator.

40. EPA used boats, including on the canal where the Well is located, to reach the site.

41. EPA determined that the threat of oil released into the immediate area, and into Bayou Des Allemands, would persist if the current condition of the Well was not addressed.

42. Between April and May 2016, EPA made a number of attempts to plug the Well through various methods. The Well was finally successfully "killed" on May 27, 2016 and the plugging and abandoning operations were completed on June 3, 2016.

43. The Fund provided the funding for EPA to plug and abandon the Well.

44. On September 28, 2015, EPA issued Notices of Potential Liability ("NOPL") to the Defendants.

45. On October 29, 2015, S. Elwood Thames, Jr. responded to the NOPL on behalf of both Defendants. This response admitted that Defendant KCM Management Inc. was the Well's last operator of record, but denied that Defendant KCM Management Inc. was the

operator after September 14, 2014 because the Louisiana Office of Conservation had deemed the Well orphaned at that time.

46. The October 29, 2015 response letter to the NOPL also admitted that Defendant LCVegas Corporation had been a working-interest owner in the mineral lease under which the operations of the Well were conducted, but asserted that this ownership interest was released on September 14, 2014 because the Louisiana Office of Conservation had deemed the Well orphaned at that time.

47. On December 18, 2018, the National Pollution Funds Center sent Defendant KCM Management Inc. a bill for the removal work totaling $1,074,767.05. This bill included the cost to plug and abandon the Well, as well as the removal of an associated battery of tanks.

48. KCM Management Inc.'s debt for the removal costs became delinquent on January 18, 2019.

49. On October 9, 2019, the National Pollution Funds Center sent Defendant LCVegas Corporation a bill for the removal work at the Facilities totaling $1,074,767.05. This bill included the cost to plug and abandon the Well, as well as the removal of an associated battery of tanks.

50. LCVegas Corporation's debt for the removal costs became delinquent on November 9, 2019.

51. Defendants have not reimbursed the Fund for any of the $1,074,767.05 in removal costs incurred by the United States.

## **LEGAL CONTENTIONS SUPPORTING CLAIMS FOR RELIEF**

52. Defendants are each a "person" within the meaning of Section 1001(27) of OPA, 33 U.S.C. § 2701(27).

53. The Well is a "facility," and was a "facility" at the time of the Incident, within the meaning of Section 1001(9) of OPA, 33 U.S.C. § 2701(9).

54. The Well was an offshore facility at the time of the Incident, within the meaning of Section 1001(22) of OPA, 33 U.S.C. § 2701(22).

55. Alternatively, the Well was an onshore facility at the time of the Incident, within the meaning of Section 1001(24) of OPA, 33 U.S.C. § 2701(24).

56. At the time of the Incident, Defendant KCM Management, Inc. was an "operator" of the Well within the meaning of Section 1001(26)(A) of OPA, 33 U.S.C. § 2701(26)(A), a "permittee" of the Well within the meaning of OPA Section 1001(28), 33 U.S.C. § 2701(28), and is a "responsible party" of the Well within the meaning of Sections 1002(a) and 1001(32) of OPA, 33 U.S.C. §§ 2702(a) and 2701(32).

57. At the time of the Incident, Defendant LCVegas Corporation was the owner of the Well within the meaning of Section 1001(26)(A)) of OPA, 33 U.S.C. § 2701(26)(A), a lessee of the Well within the meaning of Section 1001(16), 33 U.S.C. § 2701(16), and is a "responsible party" of the Well within the meaning of Sections 1002(a) and 1001(32) of OPA, 33 U.S.C. §§ 2702(a) and 2701(32).

58. Alternatively, if the Well was abandoned at the time of the Incident, Defendant LCVegas Corporation was the owner of the Well within the meaning of Section 1001(26)(A)(iii) of OPA, 33 U.S.C. § 2701(26)(A)(iii), Defendant KCM Management, Inc. was the operator of the Well within the meaning of Section 1001(26)(A)(iii) of OPA, 33 U.S.C. § 2701(26)(A) (iii),

and Defendants KCM Management, Inc. and LCVegas are entities that would have been responsible parties immediately prior to the abandonment of the Well within the meaning of Section 1001(32)(G) of OPA, 33 U.S.C. § 2701(32)(G).

59. The discharge of oil into the canal from the Well was a "discharge" of "oil" into "navigable waters" and adjoining shorelines as those terms are defined in Section 1001(7) of OPA, 33 U.S.C. § 2701(7) ("discharge"), Section 1001(23) of OPA, 33 U.S.C. § 2701(23) ("oil"), and Section 1001(21) of OPA, 33 U.S.C. § 2701(21) ("navigable waters").

60. The periodic series of oil leak occurrences from the Well resulted in the discharge or substantial threat of discharge of oil and therefore constitute an "Incident" as the term is defined in OPA Section 1001(14), 33 U.S.C. § 2701(14).

61. This series of occurrences began on or before September 2, 2014, when an LDNR inspector noted that the Well was leaking.

62. The EPA response actions described above were "removal" actions within the meaning of Section 1001(30) of OPA, 33 U.S.C. § 2701(30).

63. The money paid or costs incurred by the Fund for EPA's removal action conducted in response to the release of oil from the Well were "removal costs" within the meaning of Section 1001(31) of OPA, 33 U.S.C. § 2701(31), and Section 1002(b)(1) of OPA, 33 U.S.C. § 2702(b)(1).

64. The Fund has incurred $1,074,767.05 in unreimbursed removal costs and seeks to recover the portion of that amount attributable to the Incident.

## CLAIM FOR RELIEF
### LIABILITY OF DEFENDANTS FOR REMOVAL COSTS UNDER OPA SECTION 1002(a)

65. The allegations in all previous paragraphs are incorporated by reference.

66. As owners and/or operators and/or lessees and/or permitees of the Well from which oil was discharged into navigable waters and adjoining shorelines, Defendants are liable, jointly and severally, to the United States under Section 1002(a) of OPA, 33 U.S.C. § 2702(a), for the portion of the $1,074,767.05 in removal costs paid or incurred by the Fund as a result of the discharge of oil and/or from the substantial threat of discharge of oil from the Well in connection with the Incident.

67. Alternatively, if the Well was abandoned at the time of the Incident, Defendants are liable, jointly and severally, to the United States as entities that would have been a responsible parties immediately prior to the abandonment of the Well within the meaning of Section 1001(32)(G) of OPA, 33 U.S.C. § 2701(32)(G).

## REQUEST FOR RELIEF

WHEREFORE, The United States respectfully requests that this Court:

(1) Enter a judgment of joint and several liability against Defendants and in favor of the United States for all costs incurred by the Fund by reason of this response, including the portion of the $1,074,767.05 attributable to the plugging and abandonment of the Well, interest (including prejudgment interest), and attorney's fees; and

(2) Grant such other relief as may be appropriate.

                              Respectfully submitted,

                              FOR THE UNITED STATES OF AMERICA:

                              __s/ Karen  Dworkin_____
                              KAREN DWORKIN
                              Deputy Section Chief
                              Environmental Enforcement Section
                              Environment and Natural Resources Division
                              United States Department of Justice
                              Washington, D.C.

                    __/s_ Corinne Snow__
                    CORINNE SNOW
Texas Bar No. 24083883
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave, NW
Washington, D.C. 20530
Tel: (202) 514-3370
corinne.snow@usdoj.gov

PETER G. STRASSER
United States Attorney
Eastern District of Louisiana

JASON M. BIGELOW
Assistant United States Attorney
LA Bar Roll No. 29761
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
(O) (504) 680-3025
(C) (504) 421-2329


OF COUNSEL:

PATRICIA KINGCADE
Attorney Advisor
National Pollution Funds Center, US Coast Guard
2703 Martin Luther King Jr. Avenue SE
Washington, DC 20593

HEATHER S. KENNEALY, USCG
U.S. Coast Guard Headquarters
Office of Claims and Litigation (CG-LCL)
2703 Martin Luther King Jr. Avenue, SE, Stop 7213
Washington, DC 20593-7213