UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CIVIL ACTION

VERSUS                                            No. 19-14580

KCM MANAGEMENT, INC., ET AL.                      SECTION I

ORDER & REASONS

Before the Court is the United States of America's motion[1] for a default

judgment against defendants KCM Management, Inc. ("KCM") and LCVegas

Corporation ("LCV") (collectively, the "defendants"). The government requests that

the Court enter a judgment in its favor and against the defendants in the amount of

$738,359.44.[2]   The government also requests interest from November 9, 2019 until

the judgment is paid in full pursuant to 33 U.S.C. § 2705.[3]  For the following reasons,

the motion is granted.

I.

The government instituted this action on December 11, 2019 to recover costs

against the defendants under section 1002(a) of the Oil Pollution Act ("OPA"), 33

U.S.C. § 2702(a), paid by the Oil Spill Liability Trust Fund (the "Fund") for a "removal

action" that occurred in April and May of 2016.[4]   The removal action involved the

plugging and abandoning of Simoneaux Well No. 10 (the "Well") in Bayou Gauche,

---

[1] R. Doc. No. 17.

[2] *Id.* at 2.

[3] *Id.* The government no longer seeks costs of this proceeding. *See* R. Doc. No. 20, at
1.

[4] R. Doc. No. 1, at 1 ¶ 1.

St. Charles Parish, Louisiana.[5]  The government alleges that the defendants are jointly and severally liable for a portion of the $1,074,767.05 in costs paid by the Fund that is attributable to the plugging and abandonment of the Well.[6]

The Well consisted of a single wellhead tree with multiple valves and flow lines and was surrounded by a six-by-eight platform in about five feet of water.[7]  The oilfield canal in which the Well was located is navigable, and drainage from the canal eventually flows to the Gulf of Mexico.[8]

In May 2013, KCM was the last operator of record of the Well, and LCV was an owner and lessee of the Well.[9]  On May 13, 2013 and September 15, 2014, the Louisiana Department of Natural Resources Office of Conservation ("LDNR") sent a letter to KCM informing it that the oil field site which includes the Well had not been closed in accordance with Statewide Order No. 29-B, and that the Well was therefore deemed abandoned and declared orphaned.[10]  The letter noted that, as the last operator of record, KCM could be held liable for restoration costs for the site under Louisiana state law.[11]

According to LDNR inspection reports dated September 2, September 26, and October 28, 2014, the Well was found to be leaking.[12]  On July 10, 2015, LDNR

---

[5] *Id.*
[6] *Id.* at 1–2 ¶¶ 1–2.
[7] *Id.* at 6–7 ¶¶ 30–31.
[8] *Id.* at 7 ¶ 31.
[9] *Id.* at 10 ¶¶ 56–58.
[10] *Id.* at 7 ¶ 33.
[11] *Id.*
[12] *Id.* at 7–8 ¶¶ 34–37.

referred the site to the U.S. Environmental Protection Agency ("EPA").[13] At that time, LDNR reported that the Well had been actively leaking oil and gas from the flange above the crown valve for over two years, and the current operator of record had not addressed the issue after repeated notifications.[14] The LDNR Inspector reported that the Well had, at times, produced enough pressure for oil and water to be sprayed on the northern canal bank, approximately thirty to fifty feet from the wellhead.[15]

On July 10, 2015, the EPA Federal On-Scene Coordinator ("FOSC") determined that the Well was the source of a discharge of oil.[16] On July 14, 2015, the EPA visited the Well and observed evidence of previous releases of oil from the Well, including oil present on the well head and surrounding platform.[17] The EPA also observed leaking oil on the flange above the crown valve and bottom flange of the Well.[18] The EPA saw no evidence of routine maintenance or response by an operator, and it determined that the threat of oil being released into the immediate area and into Bayou Des Allemands would persist if the current condition of the Well were not addressed.[19]

On September 28, 2015, the EPA issued Notices of Potential Liability ("NOPL") to each of the defendants.[20] On October 29, 2015, S. Elmwood Thames, Jr. ("Thames")

---

[13] *Id.* at 7–8 ¶ 37.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 8 ¶ 38.
[17] *Id.* at 8 ¶ 39.
[18] *Id.*
[19] *Id.* at 8 ¶¶ 39, 41.
[20] *Id.* at 8 ¶ 44.

responded to the NOPL via letter on behalf of both defendants.[21]   The response

admitted that KCM was the Well's last operator of record but denied that KCM was

the operator after September 14, 2014 because the LDNR had deemed the Well

orphaned at that time.[22] The response also admitted that LCV had been a working-

interest owner in the mineral lease under which the operations of the Well were

conducted, but it asserted that this ownership interest was also released on the date

that LDNR deemed the Well orphaned.[23]

During April and May of 2016, EPA made a number of attempts to plug the

Well through various methods.[24]  The Well was successfully "killed" on May 27, 2016,

and the plugging and abandoning operations were completed on June 3, 2016.[25]  The

Fund covered the expense to plug and abandon the Well.[26]

The National Pollution Funds Center ("NPFC") sent each defendant a bill for

the removal work totaling $1,074,767.05.[27]   This amount included the cost to plug

and abandon the Well, as well as the removal of an associated battery of tanks.[28]

KCM's debt for the removal costs became delinquent on January 18, 2019, and LCV's

debt for the same became delinquent on November 9, 2019.[29]  To date, neither of the

---

[21] *Id.* at 8–9 ¶ 45.
[22] *Id.* at 8–9 ¶ 45.
[23] *Id.* at 9 ¶ 46.
[24] *Id.* at 8 ¶ 42.
[25] *Id.*
[26] *Id.* at 8 ¶ 43.
[27] *Id.* at 9 ¶¶ 47, 49.
[28] *Id.* at 9 ¶¶ 47, 49.
[29] *Id.* at 9 ¶¶ 48, 50.

defendants has reimbursed the Fund for any portion of the $1,074,767.05 in removal costs incurred by the United States.[30]

As previously mentioned, on December 11, 2019 the government filed suit against the defendants alleging they were jointly and severally liable for repayment of costs paid by the Fund for the removal action pursuant to section 1002(a) of the OPA, 33 U.S.C. § 2702(a).[31]   The United States sued the defendants to recover only the portion of the $1,074,767.05  paid by the Fund attributable to the plugging and abandonment of the Well, plus interest.[32]

The EPA FOSC reviewed files related to the removal action in preparation for the instant motion and determined that the Fund paid at least $738,359.44 in costs associated with the plugging and abandonment of the Well.[33] This amount does not include certain costs reasonably associated with the plugging of the Well, such as some primary contractor costs and federal employee time.[34] Therefore, according to the EPA, this amount is a conservative estimate of the costs incurred as a result of the plugging of the Well.[35]

The government also seeks statutory interest on the unpaid amount owed by the defendants.  Pursuant to the OPA, statutory interest accrues from the thirtieth day after the date of billing. 33 U.S.C. § 2705.  However, because each defendant was

---

[30] *Id.* at 9 ¶ 51.
[31] *See* R. Doc. No. 1.
[32] *Id.* at 1–2 ¶ 2.
[33] R. Doc. No. 17-2 at 4–5 ¶ 6
[34] *Id.*
[35] *Id.*

sent a billing letter on a different date, the government requests that interest only be calculated from the date that the latter of those two billing letters became delinquent, which was November 9, 2019.[36]

## II.

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter a default judgment against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required time period. Fed. R. Civ. P. 55(b). A plaintiff who seeks a default judgment against an unresponsive defendant must proceed with a two-step process.

First, the plaintiff must petition the clerk for an entry of default, which is simply "a notation of the party's default on the clerk's record of the case." *Trahan v. PLC Fin., Inc.*, No. 18-859, 2018 WL 10758657, at *1 (E.D. La. Mar. 29, 2018) (Barbier, J.) (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir. 1986)) (internal quotation marks omitted). Before the clerk may enter the default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Beyond that requirement, the entry of default is largely mechanical.

After the clerk has entered default, the plaintiff may move for a default judgment under Federal Rule of Civil Procedure 55(b). *Meyer v. Bayles*, 559 F. App'x 312, 313 (5th Cir. 2014). At this point, "the court must accept the well-pleaded factual allegations in the plaintiff's complaint." *Id.* (citing *Nishimatsu Const. Co., Ltd. v.*

---

[36] R. Doc. No. 1, at 9 ¶ 50; R. Doc. No. 17, at 2; R. Doc. No. 17-3, at 1.

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("In that context, the court deems the plaintiff's well-pleaded factual allegations admitted.")). At the same time, the court does not hold the defaulting defendant "to [have] admitt[ed] facts that are not well-pleaded or to [have] admitt[ed] conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (internal quotation marks and citation omitted). The default judgment should not be entered unless the judgment is "'supported by well-pleaded allegations' and . . . ha[s] 'a sufficient basis in the pleadings.'" *Id.* at 498 (quoting *Nishimatsu*, 515 F.2d at 1206).

If the plaintiff's claim is for a sum certain and the defendant has not made an appearance in court, the clerk may enter a default judgment. Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).[37] No party is entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). "Generally, the entry of default judgment is committed to the discretion of the district judge." *Ameser v. Nordstrom, Inc.*, 442 F. App'x 967, 969 (5th Cir. 2011) (internal quotation marks and citation omitted).

A court is entitled to consider several factors when determining whether to enter a default judgment, including, "whether material issues of fact are at issue,

---

[37] As discussed, *infra*, the government requests damages for a sum certain and, therefore, it could have requested that the clerk, rather than the Court, enter a default judgment against the defendants. *See* Fed. R. Civ. P. 55(b)(1). Because the clerk can only enter a default judgment for a sum certain "on the plaintiff's request," and the government failed to make such a request, the Court, rather than the clerk, will enter the default judgment. *See id.*

whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

### III.

Thames, the registered agent for both KCM and LCV, was served with a summons and the complaint on February 13, 2020 and accepted service on behalf of both defendants.[38] KCM and LCV's responsive pleadings were due March 5, 2020.[39] As of this date, KCM and LCV have yet to file responsive pleadings or appear in this case.  On April 6, 2020, the Clerk of Court issued an entry of default against KCM and LCV for failure to plead or otherwise defend themselves.[40]  On July 30, 2020, the government moved for a default judgment;[41] to date the defendants have not filed a response.

The Court must therefore determine whether, accepting the well-pleaded factual allegations in the complaint as true, the government is entitled to a judgment against the defendants for $738,359.44,  in addition to interest on this amount at the statutory rate from November 9, 2019 until the judgment is paid in full.

---

[38] *See* R. Doc. Nos. 10 & 11.
[39] *See* R. Doc. Nos. 10 & 11.
[40] R. Doc. No. 15.
[41] R. Doc. No. 17.

## A.

The OPA "was intended to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *United States v. Am. Commercial Lines, L.L.C.*, 875 F.3d 170, 173–74 (5th Cir. 2017) (internal quotation marks and citations omitted). To that end, the OPA imposes strict, joint, and several liability on parties responsible for the discharge of oil. *Id.*; *Rice v. Harken Exploration Co.,* 250 F.3d 264, 266 (5th Cir. 2001). Pursuant to section 1002(a) of the OPA:

> [E]ach responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a). Subsection (b) provides that these removal costs include all removal costs incurred by the United States. § 2702(b)(1)(A).

To demonstrate that a party is strictly liable, the government must prove that (1) the defendant is a "responsible party" (2) for the "facility" or "vessel" (3) from which oil was discharged, or from which there was a substantial threat of discharge, (4) "into or upon the navigable waters or adjoining shorelines" and (5) that the discharge resulted in "removal costs [or] damages." *United States v. E.R.R. LLC*, 417 F. Supp. 3d 789, 794 (E.D. La. 2019) (Fallon, J.) (quoting *United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 815 (S.D. Tex. 2009) and 33 U.S.C. § 2702(a)).

The government contends that the complaint alleges facts, which, if accepted as true, satisfy each of these five elements.[42] The Court agrees.

First, the defendants are responsible parties. The OPA defines a "responsible party" with respect to an offshore facility,[43] in pertinent part, as "the lessee or permittee of the area in which the facility is located[.]" 33 U.S.C. § 2701(32)(C). KCM was a permittee as defined by the OPA, because the complaint alleges that it held authorizations under Louisiana law for geological exploration of the lease on which the Well is located.[44] *See* § 2701(28) (defining a "permittee" as "a person holding an

---

[42] R. Doc. No. 17-3, at 8.

[43] The complaint alleges that the Well was an "offshore facility." R. Doc. No. 1, at ¶ 54. As discussed, *infra*, the Well was a "facility" as defined by the OPA. An offshore facility is "any facility of any kind located in, on, or under any of the navigable waters of the United States, and any facility of any kind which is subject to the jurisdiction of the United States and is located in, on, or under any other waters, other than a vessel or a public vessel[.]" 33 U.S.C. § 2701(22). The complaint alternatively alleges that the Well was an "onshore facility." R. Doc. No. 1, at 10 ¶ 55. An "onshore facility" is "any facility . . . of any kind located in, on, or under, any land within the United States other than submerged land." § 2701(24).   The Court need not determine whether the Well was an onshore or offshore facility, because the defendants are "responsible parties" under either definition.

The OPA defines a "responsible party" with respect to an onshore facility, in pertinent part, as "any person owning or operating the facility[.]" § 2701(32)(B). KCM was the last operator of record of the Well and held authorizations under Louisiana law for geographical exploration of the Well. R. Doc. No. 1, at 2 ¶¶ 7–8. LCV was an owner and lessee of the Well. *Id.* at 3 ¶ 11; *see also* § 2701(26)(A)(ii) (defining "owner or operator" in the case of an onshore or offshore facility as "any person or entity owning or operating [the] facility"). Accordingly, the defendants are responsibility parties under the OPA regardless of whether the Well is an onshore or offshore facility.

[44] R. Doc. No. 1, at 2–3 ¶ 8. These authorizations include Compliance Orders No. EI&E-11-1073 and No. EI&E-12-0079, under which the LDNR and KCM agreed to a schedule by which KCM would seek permits and commence operations to rework and/or plug the Well. *Id.* KCM held permits related to oil and gas exploration issued under Louisiana state law for the Well, including work permit L#0839-14, issued on June 16, 2014, to plug and abandon the Well. *Id.* at 3 ¶ 9.

authorization, license, or permit for geological exploration issued under . . . applicable State law[.]"). LCV was a lessee as defined by the OPA, as the complaint alleges that it held a working-interest ownership in the oil and gas lease dated March 14, 1940, granted by S.J. Simoneaux et al., as lessors, to and in favor of Stanolind Oil and Gas Company, as lessee.[45]  *See* § 2701(16) (defining "lessee" as "a person holding a leasehold interest in an oil or gas lease on lands beneath navigable waters . . . granted or maintained under applicable State law").

Whether KCM and LCV continued their operations at the Well after the date it was deemed orphaned makes no difference to whether the defendants are responsible parties. The OPA defines "responsible party" in the case of an abandoned onshore or offshore facility as "the persons or entities that would have been responsible parties immediately prior to the abandonment of the vessel or facility." § 2701(32)(G). Therefore, regardless of when the Well was deemed orphaned, KCM and LCV are still the responsible parties under the OPA as the entities that were responsible immediately prior to the abandonment of the Well.

Second, the factual allegations in the complaint establish that the Well was a "facility" as defined by the OPA, because it was located in an oilfield canal and was used to explore oil.[46]  *See* § 2701(9) (defining "facility" as "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more

---

[45] *Id.* at 3 ¶ 11. The oil and gas lease is recorded as COB PP, Folio No. 477 in the St. Charles Parish conveyance records. *Id.*

[46] *Id.* at 6 ¶ 30; *see id.* at 2–3 ¶ 8.

of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil").

Third, the complaint alleges that oil was discharged from the Well, and that there was a substantial threat of continuing discharge.[47] *See* § 2701(7) (defining "discharge" as "any emission (other than natural seepage), intentional or unintentional, [including] spilling, leaking, pumping, pouring, emitting, emptying, or dumping).

Fourth, the complaint alleges that the oil discharged from the Well flowed into and upon the navigable waters of the Bayou Des Allemands, located 0.3 miles east of Bayou Gauche, Saint Charles Parish, Louisiana.[48] *See* § 2701(21) (defining "navigable waters" as "the waters of the United States, including the territorial sea").

And fifth, the discharge resulted in removal costs incurred by the United States.[49]

In summary, the Court finds that a judgment with respect to the government's OPA claim is supported by the well-pleaded allegations of the complaint and has a sufficient basis in the pleadings. *See Wooten*, 788 F.3d at 498. Accordingly, the Court will enter a default judgment in favor of the government and against KCM and LCV.

**B.**

The Court must now "fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *M C Bank & Trust Co. v. Suard Barge Serv.,*

---

[47] *Id.* at 7–8 ¶¶ 34–39, 41 & 11 ¶ 60.
[48] *Id.* at 6–8 ¶¶ 30–31, 35, 40.
[49] *Id.* at 11 ¶ 64; R. Doc. Nos. 17-1 & 17-2.

*Inc.*, 16-14311, 2017 WL 3991076, at *5 (E.D. La. Sept. 11, 2017) (Vance, J.) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)). "In ruling on such a motion [for a default judgment], the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Brighton Painting Co.*, 267 F.R.D. 426, 428 (D.D.C. 2010)). With respect to damages, the Court cannot enter a default judgment without a hearing "unless the amount is liquidated or easily computable." *Richardson v. Salvation Army S. Territory, USA*, No. 98-10151, 1998 WL 723820, at *1 (5th Cir. 1998); *see Duncan v. Tangipahoa Parish Council*, No. 08-3840, 2009 WL 2514150, at *1 (E.D. La. Aug. 12, 2009) (Engelhardt, J.) (explaining that "[a] sum is certain when the amount claimed is a liquidated one or is one that is capable of mathematical calculation as, for example, an action on a promissory note").

In support of its motion, the government submitted two affidavits that establish the demanded amount.[50] The Court concludes that the amount demanded is a sum certain and that the evidence submitted by the government reflects the balance owed by the defendants in connection with its violation of the OPA. The government has provided sufficient evidence to support its claim for $738,359.44 without the need for an evidentiary hearing.

The government also seeks interest on the unpaid claim. Pursuant to the OPA, a responsible party "is liable to a claimant for interest on the amount paid in satisfaction of a claim" for "the period beginning on the 30th day following the date

---

[50] *See* R. Doc. Nos. 17-1 & 17-2.

on which the claim is presented to the responsible party . . . and ending on the date on which the claim is paid." 33 U.S.C. § 2705(a), (b)(1).

On December 18, 2018, the NPFC sent KCM a bill for the removal work done on the Well totaling $1,074,767.05, which included the cost to plug and abandon the Well, as well as the removal of an associated battery of tanks.[51] KCM's debt for the removal costs became delinquent on January 18, 2019. *See* § 2705. On October 9, 2019, the NPFC sent LCV the same bill for removal work, which became delinquent on November 9, 2019.[52]  The government requests interest from the date the last billing letter defaulted on November 9, 2019.[53]  Accordingly, the government is entitled to interest on the outstanding balance of $738,359.44 from November 9, 2019 to the date on which the claim is paid.[54]  The interest "shall be calculated at the average of the highest rate for commercial and finance company paper of maturities of 180 days or less obtaining on each of the days included within the period for which interest must be paid to the claimant, as published in the Federal Reserve Bulletin." § 2705(b)(4).

---

[51] R. Doc. No. 1, at 9 ¶ 47.

[52] *Id.* at 9 ¶ 49.

[53] R. Doc. No. 17-3, at 12.

[54] To be clear, the Court awards interest only on the judgment entered against the defendants today, $738,359.44, not on the amount claimed in the original billing letters.

**IV.**

After considering the government's motion and accompanying exhibits, as well as the applicable law, the Court finds that there are no factors that weigh against entering a default judgment against KCM and LCV.  Accordingly,

**IT IS ORDERED** that the motion for a default judgment is **GRANTED** and that judgment shall be entered in favor of the United States of America and against KCM Management, Inc. and LCVegas Corporation in the principal amount of $738,359.44  (the "principal amount").

**IT IS FURTHER ORDERED** that the government shall be awarded interest on the principal amount from November 9, 2019 until paid, at the rate set forth in 33 U.S.C. § 2705.

New Orleans, Louisiana, August 10, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**